IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMELIA MADRIL,

        Plaintiff,

v.                                                  CIV 00-465 BB/KBM

WILLIAM A. HALTER,[1]
Commissioner of Social Security,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

        The Commissioner of Social Security issued a final decision on March 9, 2000, denying Plaintiff Amelia Madril benefits.  This action was filed on March 31, 2000, and the matter is before the Court on Plaintiff's Motion to Reverse or Remand the Administrative Decision. *Doc. 9.*  Having reviewed the entire record and considered the arguments and relevant law, I recommend that the matter be remanded.

### I.  Background

        Plaintiff Madril was employed as a cook at an elementary school in Clovis, New Mexico from 1988 to 1996.  She described the job as requiring: walking and standing seven hours; sitting one hour; constantly bending and reaching; lifting and carrying sacks flour, boxes of meat, cases of fruits/vegetables/milk; and frequently lifting up to fifty pounds.  *Administrative Record*

---

[1] On January 20, 2001, William A. Halter became the Acting Commissioner of Social Security.  In accordance with FED. R. CIV. P. 25(d)(1), Mr. Halter is substituted for Kenneth S. Apfel as the Defendant in this action.

*("Record")* at 53, 69.  Plaintiff moved to Duran, New Mexico in June 1996 when her husband was transferred and did not return to work thereafter.  *Id.* at 245, 249, 254.  She testified that she noticed her 'bones" started to hurt in 1994 or 1995 and that she "quit" working because:

> I saw that I was getting sick, real sick.  Landing up in the hospital a lot. . . .  I was throwing up, headaches.  My bones were hurting all over.  And I was dropping a lot of stuff at school, food.  And numbness in my fingers.  And my hands were burning.  And my bones.

*Record* at 250.

In August 1997, Plaintiff applied for disability, disability insurance, and supplemental security income benefits indicating that she had been diagnosed with diabetes, ulcer, hypertension, and fibromyalgia.  She complained that "constant pain, vomiting, dizziness," daily nausea, and "real bad headaches," combined with monthly visits to her physicians, preclude her from working.  *Id.* at 41-43 (insurance), 48-53 (disability), 219-222 (SSI).  Two nontreating physicians evaluated Plaintiff's medical records and determined that she was not disabled.  They neither examined nor tested the plaintiff.  One found Madril able to do light work,[2]  *id.* at 183, and the other found her able to do medium work,[3]  *id.* at 169.

After a hearing, the Administrative Law Judge ("ALJ") found that Plaintiff's fibromyalgia, diabetes, hypertension, peptic ulcer disease, as well as chronic depression, constituted "severe impairments" but that these conditions did not meet or equal the listings.  Therefore, the ALJ found Plaintiff was not presumptively disabled.  *Id.* at 14-15.  At step four, he concluded that

---

[2] That is, lift 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours, sit 6 hours, unlimited push/pull, and no other limitations.

[3] That is, lift 50 pounds occasionally and 25 pounds frequently, stand/walk 6 hours, sit 6 hours, unlimited push/pull, and no other limitations.

Madril did not retain the residual functional capacity to "return to her past relevant work as a cook, as she described." However, he did find (apparently at step five), that she retains the residual functional capacity to do the full range of light work. *Id.* at 16-17. The ALJ applied the grids without using a vocational expert, and concluded that sufficient job opportunities exist in the regional and national economy given Plaintiff's age, restrictions, and education. *Id.* at 17.

## II.  Analysis

The ALJ's decision turns on two interrelated findings:  Plaintiff's allegations of disabling pain are not credible and Plaintiff is noncompliant with a course of treatment that could control all of her mental and physical conditions. If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Secretary's decision stands and Plaintiff is not entitled to relief. *E.g., Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992).

Among other things, Plaintiff argues that the ALJ improperly assessed credibility and, as a result, erroneously found her capable of a full rage of light work. She argues that he also erroneously applied the grids without the benefit of vocational expert testimony. Madril requests that the matter be remanded for further proceedings, including a reassessment of credibility regarding nonexertional impairments and residual functional capacity, and to obtain testimony from a vocational expert. *See Doc. 9* at 14, *Doc. 11* at 1. I agree and, although there are several factual points on which Plaintiff takes issue, I will discuss only those issues that are dispositive of the recommendation to remand.

### *A. Credibility*

#### *(1) Two of Plaintiff's Nonexertional Impairments of Several Years Duration Are Pain-Producing*

Three of Plaintiff's severe impairments are fibromyalgia, diabetes, and chronic depression. Fibromyalgia is a syndrome of pain in fibrous tissues, muscles, tendons and ligaments. There are no laboratory tests for the presence or severity of fibromyalgia – the symptoms are entirely subjective. The principal symptoms are "pain all over, fatigue, disturbed sleep, stiffness, and . . . multiple tender spots." *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir. 1996); *see also* THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 481 (17th ed. 1999). The pain of fibromyalgia "is aggravated by straining or overuse." MERCK MANUAL at 481. In addition to fibromyalgia, diabetes "may . . . cause blurred vision, fatigue, and nausea" or "numbness tingling and paresthesias in the extremities and, less often, debilitating severe, deep-seated pain." *Id.* at 168.

In her applications and testimony, Plaintiff's primary complaints are nonexertional: constant pain in her joints and "bones" and from debilitating headaches, numbness in her hands and fingers, fatigue, and dizziness. *See Record* at 243, 248, 250, 252, 255-257, 268, 270, 272 (pain & numbness); at 256, 273 (headaches); at 260-261 (depression); at 263, 272 (fatigue and dizziness). Dr. Ferrell's records beginning in May 1997 reflect that Plaintiff's complaints of these symptoms had started three years earlier. He suspected fibromyalgia and depression at that time and began treating her accordingly.[4] Plaintiff has also been treated by Dr. Bair for diabetes since

---

[4] The ALJ's opinion states that Plaintiff was "diagnosed with fibromyalgia" on June 8, 1998. *Record* at 16. However, Dr. Ferrell saw Plaintiff in May 1997 "in consultation for Dean Bair, D.O. regarding her diffuse musculoskeletal pain of three years duration." She told him that following her hysterectomy in July 1992, "she felt weak, tired, dizzy, had sleep disorder and found that she generally is under severe stress." She described the various areas that were tender, as well chronic headaches and significant depression. Dr. Ferrell suspected fibromyalgia and

4

May 1997, although Dr. Ferrell noted that the diabetic condition was "of three to four years duration."  *Record* at 102, 107.

### *(2)  Proper Analysis For Disabling Pain*

As the Commissioner acknowledges, "Courts have recognized that the pain suffered by those diagnosed with fibromyalgia can be disabling."  *Glenn v. Apfel,* 102 F. Supp. 2d 1252, 1258 (D. Kan. 2000) (and cases cited therein).  Neither Dr. Bair nor Dr. Ferrell indicated whether Plaintiff's pain is disabling or, if so, the degree to which it is disabling.  The proper analysis in such a case was set forth in *Keppler v. Chater* as follows:

> to establish disabling pain without the explicit confirmation of treating physicians may be difficult.  Nonetheless, the claimant is entitled to have his nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence.  An ALJ may not ignore the evidence and make no findings.

*Keppler*, 68 F.3d 387, 390 (10th Cir. 1995) (internal quotations and citations omitted).  The *Keppler* court then reiterated framework for the proper analysis of the evidence of allegedly disabling pain:

> We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence;  (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain;  and (3) if so,

---

recommended a trial of Flexeril.  Because Plaintiff lived "quite a distance from Albuquerque and would not be able to easily participate in the fibromyalgia program here," he also gave her literature and exercises."  *Record* at 107-109.  Dr. Ferrell noted "suspected fibromyalgia," "probable fibromyalgia," "fibromyalgia," or "diffuse musculoskeletal pain" on five occasions from May 1997 through March 1998.  *See Record* at 71-81 (visits on 5/23/97, 7/11/97, 10/24/97, 1/19/98, and 3/16/98).

The ALJ similarly found Plaintiff was "first diagnosed with depression in January 1998."  However, Dr. Ferrell noted Plaintiff had symptoms of significant depression on her first visit to him in May 1997 and prescribed Paxil for her depression on July 11, 1997.  *Record* at 97, 107.

> whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Id.* at 390 ( *citing Luna v. Bowen,* 843 F.2d 161 (10th Cir. 1987)).

The symptoms of which Plaintiff complains have the requisite "loose nexus" to her 1997 diagnosis of fibromyalgia and diabetes, thereby satisfying the first two elements under the *Luna* analysis to which *Keppler* refers.   As such,

> the ALJ was required to consider her assertions of severe pain and to decide whether he believed them. . . .  To do this, he should have considered factors such as [1] the levels of medication and their effectiveness, [2] the extensiveness of the attempts (medical or nonmedical) to obtain relief, [3] the frequency of medical contacts, [4] the nature of daily activities, [5] subjective measures of credibility that are peculiarly within the judgment of the ALJ, [6] the motivation of and relationship between the claimant and other witnesses, and [7] the consistency or compatibility of nonmedical testimony with objective medical evidence. ["*Luna*" factors].

*Id.* at 391 (internal quotations and citations omitted).

Although "*Keppler* does not require a formalistic factor-by-factor recitation of the evidence," the ALJ must set forth the "specific evidence he relies on in evaluating the claimant's credibility," *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000), and where testimony primarily concerns subjective pain, the ALJ must "articulate specific reasons for questioning the claimant's credibility," *Keppler,* 68 F.3d at 391.  Plaintiff's description of her meager daily activities[5] were apparently entirely discredited by the ALJ.  He essentially concluded that Plaintiff's allegations of

---

[5] Plaintiff testified that her husband does the cooking, washes dishes, and takes care of animals.  Plaintiff sometimes sweeps and mops, and does wash the clothes.  She testified that the day before the hearing, she awoke at 6:00 a.m., boiled an egg, watched television until noon, ate a tortilla with bologna, took 20 minutes to walk 30 feet to her elderly mother-in-law's home to check on her, walked home, and watched television the rest of the afternoon and evening.  She testified that she does not sleep well due to headaches and pains and does not drive because she is afraid of wrecking the car due to problems with focus.  *See Transcript of Hearing* at 246-50.

pain were exaggerated based solely on the seventh and first *Luna* factors, above: lack of recorded limitations and noncompliance, respectively.

### *(3) Lack of Recorded Limitations Finding*

The stated "specific reason" for discrediting Plaintiff's complaints of pain was:

> claimant's testimony of subjective complaints and functional limitations, *including pain*, was not supported by the evidence as a whole to the disabling degree alleged and, therefore, lacked credibility. I specifically find that the claimant was not a creditable witness because most of the limitations and symptoms she testified to at the hearing are not recorded in a doctor's progress notes of record.

*Record* at 15 (emphasis added). However, the absence of objective evidence is not a sufficient basis on which to base a finding of noncredibility. *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir. 1984) (subjective complaints of pain may not be disregarded solely because no objective evidence exists to support such claims).

Furthermore, Madril's course of treatment with Dr. Ferrell for fibromyalgia and with Dr. Bair for diabetes do contain notes of her complaints of chronic pain, depression, and the like. Thus, Plaintiff's testimony appears consistent with the objective medical evidence of her diagnoses. "If an impairment is reasonably expected to produce some pain," as are Plaintiff's fibromyalgia and diabetes, "allegations of disability pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence." *Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991) (emphasis and internal quotations and citations omitted); *see also e.g., Duncan v. Apfel,* 156 F.3d 1243 (10th Cir. 1998) (unreported) (inconsistent to find that a pain syndrome [fibromyalgia] is severe at step two and insignificant at step five.").

### *(4)  Noncompliance Finding*

The Social Security Administration requires claimants to follow prescribed treatment to obtain benefits.  "If [they] do not . . . without a good reason, [it] will not find [them] disabled."  20 C.F.R. §§ 404.1530 (a), (b).  While the ALJ did not rely on noncompliance under § 404.1530 as a basis to deny benefits, he did consider noncompliance in connection with Plaintiff's credibility, apparently in evaluating the first or "medication effectiveness" *Luna* factor above.  Nevertheless, either in connection with § 404.1530 or credibility determinations, a finding of noncompliance should take into consideration claimant's financial ability and mental capacity.  *See Qualls,* 206 F.3d at 1372-1373; *Knipe v. Heckler,* 755 F.2d 141,  149 n.16 (10th Cir. 1985).

The ALJ  found that Madril's testimony created "[a]n inference . . . that the claimant is simply noncompliant with the taking of medication."  *Record* at 15-16.  Although Plaintiff testified that she was covered under her husband's health insurance policy, she indicated that she had missed taking insulin at least four times in the previous six months.  The ALJ examined Madril's assertion that the insurance payed "[j]ust for one, one bottle," *id.*, and

> [found] that the claimant's statement in this regard is not creditable because there is no apparent reason why insurance coverage of the State employees would disallow payment for some insulin and allow payment for other insulin medication when the insulin is used as prescribed by the physician.

*Record* at 15-16.  The ALJ also relied on Dr. Farrell's notation that Madril had not been taking her Flexeril on a regular basis in concluding that "the claimant has medical conditions which are controllable with medication.  Any medical condition that is controlled by medication cannot then

8

become the basis for a finding of disability." *Id.*[6]

Thus, the ALJ found that because Plaintiff is covered by her husband's insurance, she is noncompliant rather than financially unable to afford insulin on occasion. This conclusion, however, is based on evidence taken out of context and is not supported by substantial evidence. The only medical records concerning Plaintiff's diabetes are those of Dr. Bair, which begin in May 1997. In June 1997, Plaintiff indicated that she was "out of all her meds" and his assessment was "diabetes poorly controlled, patient unable to afford *co-pay* for diabetic medications." *Record* at 166 (emphasis added). Moreover, in her application asking for reconsideration of the initial disability determination, Plaintiff indicated that she is "unable to work to earn money for personal needs, right food, medication, gas money to keep appointments to see doctors." *Id.* at 60. Her SSI application indicates that her husband earns $1,200 per month of which $505 is required for a mortgage payment. *Id.* at 221.

At the hearing, the ALJ asked Plaintiff if she failed to take her insulin, and she replied, "Only when I didn't have the money to buy it." *Record* at 253-254. Madril further explained that she required two bottles of insulin a month, but because of financial problems, she would "have to let go of some of the prescriptions to be able to have [the] insulin." *Id.* Upon questioning by

---

[6] The ALJ continued:

> In addition, I find that the claimant's depressive symptoms have been alleviated for the most part with Paxil, and anti-depressive medication. The claimant stated that Paxil was somewhat effective. Due to the inability of the claimant to keep up with her medications or an inability to successfully obtain them, the claimant's medical conditions was and wane. Nevertheless, the[y] are treatable, which is clearly evident by the objective medical evidence of record.

*Record* at 17.

9

counsel, Plaintiff indicated that when she could afford the prescribed medications, she took them. *Id.* at 265.

A fair reading of this testimony, taken as a whole, reveals that: Plaintiff needs two bottles of insulin per month in addition to all her other medications; occasionally she is unable to afford all of her medications simultaneously; the insulin is the most critical and other medications are foregone if she cannot afford her co-pay obligation; however she has also missed taking a few doses of insulin. Neither Plaintiff's attorney nor the ALJ clarified just how Plaintiff is juggling prescriptions in light of available finances.

Dr. Ferrell's note that Plaintiff "has not been taking her Flexeril on a regular basis" is also taken out of context. The record indicates that Dr. Ferrell previously noted that Plaintiff was intolerant to Flexeril and had been trying different drugs as a substitute for it. He discontinued Flexeril as "not effective" within two months of first prescribing it in May 1997 and prescribed other medications. In January 1998 he noted that Plaintiff does not "tolerate well at all" a number of things, including Flexeril. He "rewrote" the Flexeril prescription in March 1998. In light of her history with intolerance to Flexeril, Dr. Ferrell's isolated comment in March 1998 that she had "not been taking it" is more of a description of her history with the drug than a conclusion Plaintiff is noncompliant. *See Record* at 84, 86, 88, 93, 94, 217.[7]

The only inference that can legitimately be drawn from Madril's testimony and medical

---

[7] As for his note that he is "very skeptical" that Plaintiff" uses "modalities such as ice, massage and so forth," it was made in conjunction with the note that she "is having some increased depression. . . . She is somewhat tearful today. . . . Now she has pain 'all over my body.'" *Id.* at 216. Dr. Ferrell does not indicate to what degree finances, depression, and pain play in her ability to avail herself of massage, ice packs or (presumably) exercise. Nor does he find that these remedies, either alone or in conjunction with medication, will "control" the pain Plaintiff alleges to be disabling.

record as a whole, her testimony is that unless she cannot afford or tolerate the necessary medications, Madril has been compliant with prescribed treatments for her conditions. Thus, the ALJ's credibility determination based upon a finding of non-compliance should not stand.

### B. Reliance on Grids

For the foregoing reasons, I find that the ALJ's finding of residual functional capacity for light work, which is based on his discounting Plaintiff's credibility, is not based on substantial evidence and did not apply the proper legal framework. Application of the grids is *inappropriate* if exertional capacity is restricted by nonexertional impairments, for example, the pain and depression as present in this case. *Ragland v. Shalala,* 992 F.2d 1056, 1058 (10th Cir. 1993). Because the ALJ's credibility and residual functional capacity determinations are not conducted under the proper framework and/or supported by substantial evidence, conclusive application of the grids is also suspect.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT** Plaintiff's motion *(Doc. 9)* be granted and that this matter be remanded for further proceedings in assessing credibility and residual functional capacity and to call a vocational expert if necessary.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE